
SEALED

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF 2016 KIA OPTIMA LX, NORTH CAROLINA REGISTRATION JFK8867, VIN: 5XXGT4L35GG090810 | Case No. 2:23-mj-00034<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A TRACKING WARRANT

I, **Owen B Morris**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a tracking warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the continued monitoring of a tracking device on a **2016 Kia Optima LX** bearing a North Carolina temporary registration JFK8867 and Vehicle Identification Number **5XXGT4L35GG090810** ("the SUBJECT VEHICLE"). The SUBJECT VEHICLE is registered to "DEAYRIA EYSHAY WILLIS, 2429 The Plaza, Charlotte, NC 28205-2405". The SUBJECT VEHICLE is utilized by **DEAYRIA EYSHAY WILLIS** (hereinafter "WILLIS"). Based on the facts set forth in this affidavit, I believe that the SUBJECT VEHICLE is presently being used in furtherance of (i) the distribution and possession with intent to distribute controlled substances, to include methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and (ii) conspiracy to commit and attempts to commit these offenses, in violation of 21 U.S.C. § 846; and that there is probable cause to believe that maintaining a tracking device on the SUBJECT VEHICLE and using that tracking device will lead to evidence, fruits and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

Pursuant to a tracking warrant previously signed by the Honorable Omar J. Aboulhosn, United States Magistrate Judge, on January 4, 2023 (2:23-mj-00004) a GPS tracking device was installed on the SUBJECT VEHICLE. The authorization granted by that warrant is scheduled to expire on February 18, 2023. This warrant application seeks permission to continue monitoring that tracking device, and to maintain or replace that device if necessary, for a period of 45 days.

  2.  I am currently a Detective with the Metro Drug Unit (also known as the "Metropolitan Drug Enforcement Network Team" and hereinafter referred to as "MDENT") in Kanawha County and an active Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI") Toc West Task Force. I have been employed by the Charleston Police Department for sixteen years. From approximately October of 2020 until present, I have been assigned to MDENT as a case agent. As a Detective for MDENT, I am charged with enforcing the Controlled Substances Act, Title 21, United States Code, the West Virginia Uniform Controlled Substance Act, and other duties as imposed by law. I have completed training within this field including the 2018 WVNOA Conference which covers various aspects of drug work including highway interdiction, knock and talks, working with informants, and other narcotics related matters. I have attended a Title III class through the FBI and have assisted and worked on multiple Title III drug investigations. I have also attended numerous training courses in reference to cultivating and managing confidential informants and money laundering. I have also attended training involving video surveillance techniques for narcotics investigations. During my tenure with the Charleston Police Department, MDENT, and as a TFO with the FBI, I have participated in numerous drug investigations during the course of which I have (a) conducted physical and wire surveillance; (b) executed search warrants at locations where drugs, drug proceeds, and records of drugs have been found; (c) reviewed and analyzed numerous taped conversations and records of

drug traffickers; (d) debriefed cooperating drug traffickers; I monitored wiretapped conversations of drug traffickers; and (f) conducted surveillance of individuals engaged in drug trafficking. Through my training and experience, I have become familiar with: (a) the manner and methods by which illegal drugs are imported and distributed; (b) the methods of payment for such drugs; and (c) the efforts of persons involved in such activities to avoid detection by law enforcement. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. Among other duties, I am participating in an investigation relating to the distribution of controlled substances by WILLIS, ANTONIO LAMAR JEFFRIES (hereinafter "JEFFRIES"), KARL LAMONT FUNDERBURK (hereinafter "FUNDERBURK"), other persons known, and others yet unknown ("SUBJECTS" or "SUBJECT INDIVIDUALS").

3. On December 22, 2022, the Honorable Thomas E. Johnston, Chief United States District Court Judge in the Southern District of West Virginia, entered orders authorizing the interception of wire and electronic communications over a telephone used by ALEXANDRIA JASMINE ESTEP ("TARGET TELEPHONE #3") and authorizing the interception of wire communications over a telephone used by JEFFRIES ("TARGET TELEPHONE #4"). Interceptions expired on January 20, 2023. On January 24, 2023, the Honorable Thomas E. Johnston, Chief United States District Court Judge in the Southern District of West Virginia, entered orders authorizing the interception of wire and electronic communications over a telephone used by JEFFRIES ("TARGET TELEPHONE #4"), the interception of wire communications over another telephone used by JEFFRIES ("TARGET TELEPHONE #5"), the interception of wire and electronic communications over a telephone used by FUNDERBURK (TARGET TELEPHONE

3

#6), the interception of wire communications over a telephone used by WILLIS ("TARGET TELEPHONE #7"), and the interception of wire communications over a telephone used by PAMELA ALEXIS LITTLEBERRY ("TARGET TELEPHONE #8"). Intercepted communications have confirmed that WILLIS and JEFFRIES are involved in distributing controlled substances in and around Kanawha County, West Virginia and within the Southern District of West Virginia. Interceptions are currently scheduled to expire on February 22, 2023.

4. Surveillance officers have observed WILLIS driving the SUBJECT VEHICLE to facilitate a drug transaction. The geolocation information obtained through the use of the tracking device sought herein, will assist officers in determining the location of specific drug transactions as well as the identity and location of JEFFRIES's drug supplier or suppliers, and known and possibly unknown places where he stores his drugs and drug proceeds. Thus, the location of the SUBJECT VEHICLE will constitute or lead to the discovery of evidence relevant to the subject offenses listed above.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Summaries of recorded conversations set forth in this affidavit are based on draft transcripts of those conversations. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**PROBABLE CAUSE**

6. On or about October 11, 2011, JEFFRIES was convicted in the United States District Court for the Southern District of West Virginia of the felony offense of Possession with Intent to Distribute 280 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1). JEFFRIES received a prison sentence of 120 months, to be followed by five years of supervised

4

release. On or about October 4, 2021, JEFFRIES was revoked from supervised release due to several violations of the terms and conditions of his term of supervised release, including his illegal consumption of marijuana and oxycodone or oxymorphone. As a consequence, he was sentenced to two months' imprisonment to be followed by three years of supervised release. JEFFRIES is still serving this term of supervised release.

7. Intercepted communications occurring over TARGET TELEPHONE #4 have established that JEFFRIES distributes controlled substances in and around Charleston, West Virginia. The investigation has revealed that WILLIS travels with large amounts of money and travels to obtain controlled substances for JEFFRIES.

8. On or about December 14, 2022, WILLIS was stopped by deputies with the Mercer County, West Virginia Sheriff's Department while she was driving the SUBJECT VEHICLE. The odor of marijuana was detected by officers upon their approach and officers searched the SUBJECT VEHICLE. During the search, officers located a bag containing approximately $24,900 in United States currency. When questioned, WILLIS stated that she did not know what was in the bag and that she picked up the bag from a female by the name of Shelby and from her "baby daddy's brother". WILLIS stated that she was going to bring the bag to "her baby daddy." WILLIS was released at the conclusion of the traffic stop.

9. On or about January 10, 2023, after receiving Court authorization in the form of a tracking warrant signed by the Honorable Omar J. Aboulhosn, United States Magistrate Judge, a GPS tracker was installed onto the SUBJECT VEHICLE. The authorization from that tracking warrant is scheduled to terminate on February 18, 2023.

10. On January 29, 2023, law enforcement officers followed WILLIS, driving the SUBJECT VEHICLE, to the Mercer County Mall located at 261 Mercer Mall Road, Bluefield,

West Virginia 24701. Officers were able to set up in the area to conduct physical surveillance and use an aerial drone to conduct surveillance on WILLIS in the area of the Mercer County Mall on that date. Officers observed WILLIS go inside the Mercer County Mall, come back out, and sit in the SUBJECT VEHICLE for a long period of time. On the same date, officers were also conducting surveillance on a residence located at 194 Jewell Court, Bluefield, West Virginia 24701. Officers were able to observe a black male in a brown coat come out of 194 Jewell Court and get into a 2012 Kia Optima LX bearing West Virginia registration 4WN522. While WILLIS was sitting at the Mercer County Mall in the SUBJECT VEHICLE waiting, the 2012 Kia Optima LX bearing West Virginia registration 4WN522 left 194 Jewell Court. The 2012 Kia Optima LX bearing West Virginia registration 4WN522 was observed arriving at the Mercer County Mall where it drove a lap around the whole mall in what officers believed to be an attempt to identify any law enforcement officers in the area. The 2012 Kia Optima LX bearing West Virginia registration 4WN522 then went back to 194 Jewell Court. A short time later, law enforcement observed the 2012 Kia Optima LX bearing West Virginia registration 4WN522 leaving 194 Jewell Court with a black male wearing a brown coat in it. Surveillance observed the 2012 Kia Optima LX bearing West Virginia registration 4WN522 come to the Mercer County Mall and park in front of the Planet Fitness. WILLIS then drove the SUBJECT VEHICLE up beside the 2012 Kia Optima LX bearing West Virginia registration 4WN522, got out of the SUBJECT VEHICLE, and leaned over into the passenger side window of the 2012 Kia Optima. Seconds later, WILLIS turned around and got back into the SUBJECT VEHICLE. WILLIS then departed the Mercer County Mall in the SUBJECT VEHICLE, and the 2012 Kia Optima LX bearing West Virginia registration 4WN522 also left the Mercer County Mall, with each vehicle going in a separate direction. Law enforcement was able to follow WILLIS in the SUBJECT VEHICLE back to Charleston, West

Virginia and observe that WILLIS did not make any stops prior to arriving in Charleston. Law enforcement observed WILLIS travel directly to 1629 Chandler Drive, Charleston, West Virginia and arrive at approximately 8:28 P.M. Surveillance observed a Jeep that officers have observed JEFFRIES driving along with a Dodge Charger that officers have observed FUNDERBURK driving, both parked in the area of 1629 Chandler Drive. After a few minutes, WILLIS left this residence and then left Charleston, West Virginia.

11. On January 29, 2023, at approximately 8:22 P.M. (Session 0999), FUNDERBURK spoke to a male identified in the call as "Jimmy" over TARGET TELEPHONE #6. FUNDERBURK told Jimmy "I need uh one of your people to try some shit for me.", "I need them to try this dope for me (inaudible)". Based on my training, experience, and the investigation thus far, I believe FUNDERBURK was trying to find someone to try heroin or fentanyl that he was receiving from WILLIS in order to make sure it was not too weak or too potent. I know that individuals involved in trafficking heroin or fentanyl often mix it with non-controlled substances, known as "cutting agents," to reduce the potency of the heroin/fentanyl and increase their profits.

12. On January 29, 2023 at 8:56 PM, JEFFRIES, on TARGET TELEPHONE #5 (Session 00123), placed an outgoing call to MICHAEL JEFFRIES (hereinafter "M.JEFFRIES"), on telephone number (681)215-9155. Based on my training, experience, and the investigation thus far, I believe JEFFRIES sent M.JEFFRIES to find a cutting agent for heroin or fentanyl ("What about the spot across from Hardee's?", "On Bigley.") but M.JEFFRIES said that all the places that sell cutting agents are closed ("Every where's closed.") and that he did try FreeDome Smoke Shop ("That's where I went to."). FUNDERBURK was also heard in the background contributing to the conversation by suggesting FreeDome Smoke Shop, on Bigley Avenue in Charleston, West Virginia.

7

13. On January 29, 2023 at 9:41 PM, JEFFRIES, on TARGET TELEPHONE #5 (Session 00124), received an incoming call from M.JEFFRIES, on telephone number (681)215-9155. Based on my training, experience, and the investigation thus far, I believe M.JEFFRIES told JEFFRIES that he found cutting agent for heroin or fentanyl ("Yea, I found some."). JEFFRIES told him to bring it to FUNDERBURK's residence on Chandler Drive in Charleston, West Virginia ("UI bring it to me at Scoots."). Based on all law enforcement surveillance and the above calls, investigators believe that WILLIS retrieved heroin or fentanyl from an individual inside the 2012 Kia Optima LX bearing West Virginia registration 4WN522 in Bluefield, West Virginia on January 29, 2023, and brought it back to 1629 Chandler Drive, Charleston, West Virginia for FUNDERBURK and JEFFRIES.

14. On February 1, 2023 at 3:55 PM, WILLIS, on TARGET TELEPHONE #7 (Session 00231), received an incoming call from TRES DAVIS (hereinafter "DAVIS"), on (304)539-5176. The following was discussed:

WILLIS: Hello.

DAVIS: Do you want to do me a favor while you're there?

WILLIS: What?

DAVIS: Um. Go to the uh...are you in my room?

WILLIS: Yea.

DAVIS: Alright in the backroom.

WILLIS: Ah.

DAVIS: When you go in the backroom make a left, uh the washer and dryer.

WILLIS: You said in between?

DAVIS: No in the washer and dryer room. Where the washer and dryer at.

8

| | |
|---|---|
| WILLIS: | Yeah, I'm in here. |
| DAVIS: | Alright you see the shoes that's hanging on the door. |
| WILLIS: | Uh huh. |
| DAVIS: | There should be a bag that's hanging on the door. |
| WILLIS: | Uh huh. |
| DAVIS: | Like a blue bag, reach in it and pull out another bag. |
| WILLIS: | Reach in it and pull out another bag? |
| DAVIS: | Yeah [UI] |
| WILLIS: | There's two bags on this door babe hold on. |
| DAVIS: | There should be a blue bag. |
| WILLIS: | I got the blue bag. |
| DAVIS: | Alright. |
| WILLIS: | Ain't nothing in there but a whole bunch of bags. Huh? |
| DAVIS: | Stick your hand in there. |
| WILLIS: | I know, ain't nothing in there but bags baby I'm telling you. |
| DAVIS: | Ask Brent, ask Brent what he did with it then. |
| WILLIS: | Alright hold on it might be in this bag, it is, I know what you talking about I got it. |
| DAVIS: | Alright. Uh I need uh I need 50, I need to weigh out 56 and I need to weigh out 112. |
| WILLIS: | Okay. |
| DAVIS: | Um [UI] gonna be there to grab it. |
| WILLIS: | Okay 56 and 112. |
| DAVIS: | Yes, yes ma'am. I'll be there [UI] |

9

15. Based on my training, experience, and the investigation thus far, I believe DAVIS asked if WILLIS could assist him ("Do you want to do me a favor while you're there?"). WILLIS asked DAVIS "What?" and DAVIS directed WILLIS to controlled substances located in a bag near the washer and dryer at 1730 Kemp Avenue, Charleston, West Virginia ("No in the washer and dryer room. Where the washer and dryer at.". "Like a blue bag, reach in it and pull out another bag."). WILLIS located the controlled substances ("Alright hold on it might be in this bag, it is, I know what you talking about I got it."). DAVIS told WILLIS to weigh out 56 grams and 112 grams of controlled substances ("Alright. Uh I need uh I need 50, I need to weigh out 56 and I need to weigh out 112.").

16. On February 4, 2023, with the assistance of a GPS tracker installed on a vehicle driven by TELISA RENE MCCAULEY (hereinafter "MCCAULEY"), law enforcement followed MCCAULEY from Charleston, West Virginia, to the Mercer County Mall in Bluefield, West Virginia, where investigators believe she obtained a large quantity of methamphetamine inside a black trash bag from TERRANCE DOTSON (hereinafter "DOTSON"). After meeting with DOTSON, MCCAULEY left Bluefield, West Virginia and began traveling on Interstate 77 North. Once MCCAULEY made it to the Ghent area of Raleigh County, West Virginia, a traffic stop was conducted. Law enforcement officers involved in the traffic stop searched MCCAULEY's vehicle and recovered approximately 3,314.7 grams of suspected methamphetamine inside a black trash bag. MCCAULEY (the driver) and HILL (the front seat passenger) were both arrested and charged with felony offenses through Raleigh County Magistrate Court. Intercepted communications established that MCCAULEY took the trip and obtained the methamphetamine at the request of JEFFRIES.

17. On February 7, 2023, at 11:44 PM, JEFFRIES placed an outgoing call on TARGET TELEPHONE #4 (SESSION #00561) to WILLIS, on TARGET TELEPHONE #7. The following was discussed.

JEFFRIES: (UI)

WILLIS: You there.

JEFFRIES: What?

WILLIS: What you doing?

JEFFRIES: (UI)

WILLIS: Huh?

JEFFRIES: What calling (UI)?

WILLIS: I can't hear ya. Your phone breaking up.

JEFFRIES: I'm going to come out here in a minute and have you take care of that.

WILLIS: Okay.

JEFFRIES: Alright.

WILLIS: Wait. You talking about the bluefield?

JEFFRIES: No, uhh. ole girl

WILLIS: For the Bailey or to go get them out

JEFFRIES: I am going to get one of them out (UI)

WILLIS: Alright but, just call, just call me.

18. Based on my training, experience and the investigation thus far, I believe JEFFRIES called WILLIS to tell her to be ready because he was going to send her to Beckley, West Virginia to bond MCCAULEY out of jail ("I'm going to come out here in a minute and have you take care of that."). WILLIS asked about the purpose of the trip ("For the Bailey or to go get

11

them out") and JEFFRIES answers that he is going to get one of the women involved in the February 4, 2023 traffic stop out of jail ("I am going to get one of them out (UI)"). WILLIS acknowledges ("Alright but, just call, just call me.")

19. On February 7, 2023, at 5:57 PM, JEFFRIES on TARGET TELEPHONE #4 (Session 01036), placed an outgoing call to WILLIS on TARGET TELEPHONE #7. The following was discussed:

WILLIS: Hello.

JEFFRIES: What up, where you at?

WILLIS: Shit leaving, I'm in Dunbar still.

JEFFRIES: Call me when you get on the West.

WILLIS: Come to the West?

JEFFRIES: Yeah, call me when you get here.

WILLIS: Alright, I'm on my way now bout to jump on the highway.

JEFFRIES: Oh, you already met her?

WILLIS: Yeah, I already met her.

JEFFRIES: Did you get the phone?

WILLIS: Hm? Yup.

JEFFRIES: Call me when you get to the uh, the uh, the uh, the Go-Mart. The Go-Mart right there by the interstate.

WILLIS: The Go-Mart by the interstate?

JEFFRIES: Yes.

WILLIS: Alright bet.

20. Based on my training, experience, and the investigation thus far, I believe JEFFRIES and WILLIS are trying to coordinate a place to meet so that JEFFRIES can obtain a phone from WILLIS ("What up, where you at?", "Call me when you get on the West.", " Did you get the phone?"). JEFFRIES stopped using TARGET TELEPHONE #5, the phone that he used to coordinate MCCAULEY's trip to Bluefield, West Virginia on February 4, 2023, after the traffic stop and seizure of meth from MCCAULEY's vehicle in Raleigh County, West Virginia on the same date. I know that those involved in drug trafficking commonly discontinue their use of cell phones in an effort to avoid being linked to individuals who have been arrested and found by law enforcement to be in possession of controlled substances.

21. On the February 7, 2023, at 6:09 PM, JEFFRIES placed an outgoing call on TARGET TELEPHONE #4 (session #01039) to WILLIS on TARGET TELEPHONE #7. The following was discussed.

WILLIS: Hello

JEFFRIES: Hello

WILLIS: Hello

JEFFRIES: Where you at?

WILLIS: Im at the Gomart.

JEFFRIES: Alright

22. Based on my training, experience and the investigation thus far, I believe that JEFFRIES and WILLIS are trying to arrange a meeting. WILLIS gave her location to JEFFRIES ("Im at the Gomart.") . At approximately 6:20 P.M., law enforcement observed WILLIS at the One Stop at 129 Lee Street West, Charleston, West Virginia 25302. Officers reviewed location data from the GPS tracker on the SUBJECT VEHICLE and observed that it was located at the One

13

Stop as well. Officers also physically observed the SUBJECT VEHICLE parked at a gas pump at the One Stop. At approximately 6:23 P.M. JEFFRIES arrived and parked one gas pump to the west of WILLIS. WILLIS was observed going to the passenger side of JEFFRIES' Jeep. At approximately 6:24 P.M. WILLIS exited the Jeep and JEFFRIES drove away in the Jeep. Investigators then monitored location data from the GPS tracker on the SUBJECT VEHICLE and saw that it also left the One Stop.

23. Since the initial installation of the GPS tracker, investigators have observed WILLIS regularly utilize the SUBJECT VEHICLE to conduct drug and money transactions.

24. Officers obtained records from the West Virginia Division of Motor Vehicles and determined that the SUBJECT VEHICLE is registered to WILLIS. Based on the investigation to date, it is believed that WILLIS uses the SUBJECT VEHICLE to transport money and illegal controlled substances. By tracking the vehicle in question, agents believe it will provide valuable information in determining the locations where JEFFRIES stores controlled substances and the proceeds of drug trafficking and locations where he sends WILLIS to meet suppliers. This would assist in determining the scope of the organization in West Virginia. It would also assist surveillance officers in maintaining visual contact with WILLIS without being detected.

25. Based on agents' own observations and the observations of other law enforcement officers, and information obtained during the course of this investigation, it is believed that the SUBJECT VEHICLE will be present within the Southern District of West Virginia as WILLIS uses it to meet with co-conspirators in the drug trafficking organization. This belief is based on information obtained during the course of the investigation and the routines observed by investigators as corroborated by the SUBJECT VEHICLE being located in Charleston, West

Virginia, within the Southern District of West Virginia by officers several times during the investigation.

26. In order to track the movement of the SUBJECT VEHICLE effectively and to decrease the chance of detection, I seek authorization to monitor the tracking device that has already been installed on the SUBJECT VEHICLE, and to maintain it or replace it if necessary while it is in the Southern District of West Virginia. If WILLIS parks the SUBJECT VEHICLE in a driveway or on other private property for long periods of time, including overnight, it may be necessary to enter onto private property to effect the repair, replacement, and removal of the tracking device. The property where WILLIS has been seen parking the SUBJECT VEHICLE is 27 Amandaville Court, Saint Albans, West Virginia 25177. Based on prior investigation and observation in this matter, it is believed that the SUBJECT VEHICLE will be located in Kanawha County, West Virginia, within the Southern District of West Virginia.

27. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize continued monitoring, maintenance, and removal of the tracking device during both daytime and nighttime hours. It is requested that the Court authorize the executing officers to enter onto private property to effect the repair, replacement, and removal of the tracking device. Such entry onto private property would be limited to driveways, roads, carports, parking pads, or similar outdoor locations not requiring entry into enclosed spaces like a garage.

28. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 45 days from the date this warrant is issued. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

29. Based on the foregoing, I request that the Court issue the proposed tracking warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the FBI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the SUBJECT VEHICLE after the use of the tracking device has ended; to maintain, replace, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter private property to effect the repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Southern District of West Virginia.

30. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 90 days after the warrant is issued because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. The investigation is ongoing and complex, and agents believe that it will continue for several months before concluding. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

31. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the Federal Bureau of Investigation, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

Respectfully submitted,

_____
Owen B Morris, Detective/TFO
Metro Drug Enforcement Network Team/
FEDERAL BUREAU OF INVESTIGATION
TOC West Task Force

Sworn to by the affiant telephonically in accordance with the procedures of Rule 4.1 this 14th day of February, 2023.

_____
HONORABLE DWANE L. TINSLEY
United States Magistrate Judge